Felix J. Aulisi, J.
The petitioner, a labor union, moves for arbitration of an asserted dispute under a collective bargaining agreement entered into between said union and the respondent company on December 1,1960.
The company has interposed an answer and by cross- motion asks for a dismissal of the petition on the ground that it appears on the face of same to be insufficient in law to warrant the relief requested or, in the alternative, for an order granting respondent summary judgment and dismissal of the petition. Inasmuch as all the facts are before the court and the controversy presents questions of law, they will be decided together and disposed of on the merits.
The issue between the union and the company is whether the dispute which has arisen is arbitrable under the collective bargaining agreement. [See footnote at end of this opinion.] * The controversy arises out of the dismissal of Joseph Roulier on August 31, 1962 by the respondent. Mr. Roulier was one of its employees and a member of the union. He was a Staff Radio Specialist and conducted a music program known as “ Joe’s Show ” on Station W G Y.
In my opinion, the management responsibility clause is merely a reaffirmation of the common-law rule that the right to manage the business belongs exclusively to management. The union here has failed to point out how the controversy it seeks to arbitrate involves an express limitation on management rights. It has the burden of doing so. If such were not so, it would, in effect make any controversy arbitrable at the option of the union since any action taken by the company might be said to affect its employees in some way (Matter of Carborundum Co. [Swisher], 17 Misc 2d 231).
It is now well settled that unless the particular dispute is arbitrable under the agreement calling for arbitration, there is no duty to arbitrate, and that the arbitrability of the dispute is a question of law for the determination of the court (Matter of New York Mirror [Potoker], 5 A D 2d 423; Matter of Miller Art Co. [Firestone], 4 A D 2d 1032). Nor does the mere assertion of a dispute, unsupported by facts, establish the existence of a genuine arbitrable issue (Matter of Essenson [Upper Queens Med. Group], 307 N. Y. 68).
The intent of the parties must be ascertained from the agreement and my belief is that, under the circumstances that Mr. Roulier’s employment was terminated, it was not the intention of the union and the company that the subject dispute should be submitted to arbitration.
*765 It is to be noted that the arbitration clause of the agreement is not all-embracing, but is rather restrictive. It permits arbitration of “ any grievance which involves the interpretation or application of this Agreement ’ ’ and also denies the arbitrator the power to alter, amend, change, modify, add to or subtract from any of the provisions of this agreement. It is apparent then, that the parties to this agreement have confined themselves in the area of arbitration. That is — not every and any dispute or grievance relating to or in connection with the agreement shall be submitted to arbitration, but only those grievances involving interpretation or application of the agreement. Does the claim of the union give rise to a dispute involving the interpretation or application of this agreement? I think not.
An examination of clause 11 of schedule 1 discloses and is interpreted by this court to mean that provided the company does not terminate employment in violation of the National Labor Relations Act, it has the unfettered right to terminate employment for insubordination, incompetence or misconduct, and further, when discharge is for any cause but misconduct, the power of the company to discharge is unrestricted and its only obligation is to give the employee four weeks’ notice in writing of such termination or two weeks’ pay in lieu thereof. There is no claim that the company has not fully performed its obligation under said clause.
Further indication that the union and the company did not intend that all unresolved disputes should be submitted to compulsory arbitration is found in the “ no-strike ” provision (clause 14) of the agreement where the union has the alternative of either submitting the issue to arbitration or calling a strike or other work stoppage to enforce its demands, provided that the grievance has been processed in accordance with clause 12.
From the above I conclude and decide that the dispute in question does not involve interpretation or application of any provision of the collective bargaining agreement and that the petition of the union should be dismissed.

‘ The following are the specific clauses of the agreement on which in my opinion, the determination of the question before the court largely hinges, viz.:
8. MANAGEMENT RESPONSIBILITY.
Subject only to any express limitations provided in this Agreement, the Company retains the exclusive right to manage its business, including (hut not limited to) the right to determine the methods and means by which its questions are to be carried on, to direct the work force and determine its qualifications, and to maintain safety, efficiency and order in the Company operations. * * *
*766 SCHEDULE 1.
11. TERMINATION OP EMPLOYMENT
The company agrees not to terminate employment in violation of the National Labor Relations Act, as amended. Subject thereto, the Company shall have the right to terminate employment for insubordination, incompetence, or misconduct. When termination is for any cause but misconduct, the Company agrees to give the staff announcer four weeks’ notice in writing of such termination, or 2 weeks’ pay in lieu thereof, and a staff announcer shall give the Company two weeks notice of his intent to terminate his employment with the Station.
12. GRIEVANCE PROCEDURE
(a) Any individual artist or group of artists shall have the right at any time to present grievances to the -Company and to have such grievances adjusted, without the intervention of APTRA, as long as the adjustment is not inconsistent with the terms of this Agreement and provided that a representative of APTRA has been given the opportunity to be present at such adjustment.
Grievances of a genei-al nature filed by APTRA may be initiated at the second step of the grievance procedure.
(b) This Agreement is intended to be and shall be in full settlement of all issues which were the subject of collective bargaining between the parties in collective bargaining negotiations in 1960. The Grievance procedure established by this Article shall be used for the purpose of orderly adjustment between the parties of all claims and disputes during the term of this Agreement, which involve the interpretation or application of this Agreement.
FIRST STEP
Any artist may take up a grievance with his immediate supervisor, with his Steward, or a Steward may take up a grievance without the artist being present. Any group of artists may take up a group grievance with -their immediate supervisor through their Steward. Generally, grievances will be answered by the supervisor within three (3) days. If additional .time is needed, the supervisor will take this up with the Steward, and a time (normally not to exceed 7 days) for such settlement will be set by mutual agreement. If continued consideration time is necessary, the supervisor and Steward may agree to a further reasonable extension of time.
After a Steward has submitted a grievance to the Company’s supervisor all discussions and settlements with respect to this grievance shall be handled through the Steward.
SECOND STEP
If a settlement is not reached at the first step, the Steward may refer the grievance to the Grievance Committee of the Union or National Representative who may submit the grievance in writing to a designated representative of Management. Thereupon, -a meeting between the Union Grievance Committee (not to exceed three members) and the designated representative or representatives of Management will be held within seven (7) days of receipt of the grievance and an answer given within seven (7) days after the meeting has been held.
After the grievance has been submitted to the designated representative of Management, all discussions and settlements with respect to the grievance shall be handled through the Committee, or National Representative.
THIRD STEP
If a settlement is not reached at the Second Step, the Union may refer the grievance to Step 3, for negotiation with -the General Manager of Broadcasting-Stations Operation or his designated representative. A meeting will be arranged within one (1) week from receipt of such notification, unless a different time *767 limit is set by mutual agreement. The Company shall give its final decision to the Union within two (2) weeks after the completion of discussion on any grievance. Upon the expiration of sixty (60) days thereafter, the grievance shall be deemed finally settled and closed for all purposes, unless the Union requests arbitration in accordance with Article 13.
13. ARBITRATION
(a) Any grievance which involves the interpretation or application of this Agreement, and which remains unsettled after having been fully processed pursuant to the provisions of Article 12 may be submitted to arbitration upon request of either AFTRA or the Company, provided such request is made within 60 days after the decision of the Company has been given to the Union pursuant to Article 12. In each case, the arbitrator shall be selected and the arbitration proceedings conducted according to procedures mutually satisfactory to the Company and AFTRA.
(b) In the event that the parties cannot agree on the selection of an arbitrator within thirty (30) days, after a grievance which represents an arbitrable issue has been appealed to arbitration, the parties shall jointly request the American Arbitration Association to submit a panel of suggested arbitrators from which an arbitrator shall be chosen by some mutually satisfactory means.
(e) The award of an arbitrator so selected upon any grievance subject to arbitration as herein provided shall be final and binding upon all parties to this Agreement, and judgment upon such award may be entered by any party in the highest court of the forum, state or federal, having jurisdiction.
(d) AFTRA shall be on ex-officio party to all arbitration proceedings hereunder in which any artist is involved, and AFTRA mlay do anything which an artist named in such proceedings might do. Copies of all notices, demands, and other papers filed by any party in arbitration proceedings, and copies of all motions, actions or proceedings in court following the award, shall be promptly-filed with AFTRA.
(e) Nothing herein contained shall be deemed to give the arbitration board of authority, power or right to alter, amend, change, modify, add to or subtract from any of the provisions of this Agreement.
(f) AFTRA agrees to aid in the enforcement of any awards against its members by appropriate disciplinary action.
14. STRIKES and LOCKOUTS
(a) During the term of this Agreement, there shall be no strike, sitdown, slowdown, employee demonstration or any other organized or concerted interference with work of any kind, and no strike or interference with work shall be directly or indirectly authorized or sanctioned by the Union or any of its respective officers, officials, stewards or representatives, provided that the foregoing shall not be applicable where:
(1) The Union calls a strike over a grievance which has originated in such bargaining unit, after such grievance has been fully processed in accordance with and through the successive steps of the grievance procedure; provided that no such strike shall be called or commenced with respect to any grievance which has been settled and closed as provided in the grievance procedure, nor with respect to any grievance which is submitted to arbitration.
SECTION 2.
4. CONDITIONS APPLICABLE TO SPECIALISTS
The following conditions shall apply to specialists:
(a) All conditions of Basie Agreement.
(b) Schedule 1 — Sections 9, 10, 11, 13, 15, 17 and 18.